Our next argument this morning is Linear v. University Park. Good morning, Your Honors. The question before you is whether Lafayette Linear had a reasonable expectation of continued employment. He did. Not based on some misplaced confidence. Counsel, I have a foundational question about this case, which is why are we here? The plaintiff and the defendant are both citizens of Illinois, and it seems that the issue being argued is the validity of some contract under Illinois law. That looks like it's an issue that ought to be in Illinois court. So, why are we here? Well, Your Honor, our complaint alleges three counts. A federal due process count and then the two state counts. And what is the due process claim? This contract, assuming its validity, allows termination for any or no reason on payment of six-month severance. There's no right to a hearing under the contract. There's only a right to be paid six-month severance. So, the due process claim just evaporates like that. And we come back to my question, why are we here? Your Honor, well, we dispute that assertion in that... No, no, the contract is express. It says, let go without cause. If he let go without cause, he's owed six-month severance. The contract also contains a provision that Mr. Linear is entitled to notice. Oh, that's a different argument. It's actually one you make in your brief and which the Supreme Court has rejected repeatedly. There is an argument made that the property interest is the process, that there was process promised either in the contract or by some state law. A decision called Olam against Wakinakona in the Supreme Court says the existence of process as a matter of contract or state law does not create a property interest for purposes of the due process clause. Your brief just supposes that Olam came out the other way. And so we're back to my basic question, why are we here? Well, again, Your Honor, we would assert that the combination of the contract, which again provides for notice and a pre-termination hearing along with... Olam says that is not a property interest. Well, Your Honor... So what we have is a contract claim. And there's another whole branch of cases which both sides seem unaware of, saying that a breach of contract claim based on a contract between somebody and a government agency cannot be litigated in federal court under the due process clause. It is simply a contract claim, and it must go to state court. The foundational case for that sequence is Mid-America Waste Systems against the city of Gary from 1995. Which brings me back to my question, why are we here? We can't overrule Olam. No one has asked us to overrule Mid-America Waste Systems, and that line of cases has been repeated roughly one or two cases a year ever since 1995. The whole foundation for your claim seems to be that Olam and Mid-America Waste had come out the other way, but they didn't, and here we are. Yes, Your Honor, and I recognize the court's concerns. The district court obviously didn't raise these points, and I recognize jurisdictional claims can be raised by this court on its own. Again, we would point to the fact that Mr. Lanier has brought this due process count. It's a federal count. But we held in Mid-America that you cannot say there's a breach of contract, therefore there's a due process claim. It's just a claim for breach of contract. I understand that, Your Honor. And we cite the Illinois Municipal Code, which does provide due process protections for municipal officials. That's a state law rule. It's not a federal rule. The fact that there's a state guarantee of procedures is a claim resting on state law. That's the holding of Olam against Joaquin Acona. It's a decision of the Supreme Court.  I understand, Your Honor. Based, again, on these points in the brief, we assert that there is federal jurisdiction. The district court did not dispute that. And, again, Mr. Lanier had a reasonable expectation of continued employment, and based on the defendant's conduct, based on what the defendants did, they drafted not one but two contracts for Lanier. They enacted not one but two ordinances for Lanier. These contracts specify the duration of Lanier's employment. These contracts provide Lanier with pre-termination protections. And based on, additionally, the catalyst for the contracts that the defendants want Lanier for his experience, proven expertise, familiarity with municipal government, it's these actions, these words all from the defendants that created a reasonable expectation of continued employment. Additionally, we would point out that the Walters case, which the district court cited and the defendants rely on in this court, that case is distinguishable on its face. The 10-year contract in Walters is far removed from the one-year extension here. Walters involved two separate administrations. In contrast here, the mayor signs a contract and a few months later tears it up because she says that she can't enter it. The defendants here drafted the contract, and in it they cite the concerns of continuity and transition. And finally, Walters involved did not involve a home rule municipality like here. And the defendants' position, their voided contract argument, is built on a fault line, and that fault line is home rule authority. These contracts were entered into in the defendants' own words under their home rule authority. And this home rule authority allows municipalities to self-govern. The employment contracts with Lanier here involve a function pertaining to the village's government and its affairs. So based on these principles, the home rule authority enabled the defendants to enter this contract, and thus it undermines the defendants' voided contract argument. And if there are no further questions, I will save my time for rebuttal. Thank you, Your Honors. Certainly, Counsel. Ms. Turiello. May it please the Court. The focus of this case below has always been about the lack of notice, the lack of hearings. That is to the second element of the procedural due process claim, and little attention was paid to the first element of that type of claim, whether or not a protected property interest exists. And so far as I can see, no attention at all was paid to the Supreme Court's holding in Olam, our holding in Mid-America Waste against Gary, and many similar cases saying that if you've got a state claim of breach of a contract with a public agency, you must litigate in state court. That is correct. Those cases were not addressed in the forum below, and we are assuming the district court's ruling stands. We're headed to state court. That will be the result. I would just like to point out that we are here, again, on an issue that got very little attention below, very little, and now plaintiff wants a do-over, basically. Five sentences were devoted in the summary judgment memorandum to the protected property interest issue. They called it axiomatic that the termination deprived him of a protected property interest. That was their position all along. And I need to address something very important that came up in the reply brief. The plaintiff contends that he was justified in formulating his arguments in the way that he did because we first conceded the protected property interest element of the case, and that's not so. We filed an answer in the case that denied the plaintiff had a protected property interest and continued employment. We filed an affirmative defense to the effect that the claim failed to state a cause of action for which relief could be granted. Plaintiff has a letter from the mayor saying this amendment to your employment agreement conferred no rights upon you. We always urged that this amendment to the employment agreement was void and unenforceable, and out of that comes the argument that no protected property interest could possibly emanate from this contract. But it's just a state law issue. I'm just perplexed by the party's inattention to the distinction between state and federal law. It's a pretty fundamental distinction in our legal system. I understand, Your Honor, the point you're making. And, again, it appears as long as this is going to get affirmed that we are headed back to state court where we're apparently belong. Whether you're headed back to state court will depend on whether the state judiciary is willing to listen. Very true. Usually rules of preclusion prevent trying in multiple forms. Very true. That's up to the state judge. In the event the merits do get reached, I just want to address a few things that Mr. Kelleher pointed out. Walters v. Village of Colfax is the main plank of the arguments that have been raised in the briefs before the court, and I don't agree that there's a distinction between that case and this case. It was a 10-year contract in Walters. It's a one-year contract here, but the violation of the municipal code is self-evident. It's there all the same. There's also been a point raised about the fact that we have the mayor who signed the contract but also is the one seeking to repudiate it. Well, I think just focusing on the mayor is a bit myopic because the mayor, the administration is the board with the mayor, and as a result of this election, the April 7, 2015 election, there was a new trustee elected to this board. So it's not the case, in fact, that it was the same board that signed the contract or authorized the contract to be signed that is now seeking to repudiate it. The composition of the board changed between when this amendment to the employment contract was signed and after post-election. So the purposes underlying the municipal code provisions that we've been citing and talking about, 817B and 3.1-30-5, are very much served here under these facts as well. The fact that Ms. Covington won re-election doesn't matter. This contract still violates the municipal code and, therefore, there's no property interest that can arise or emanate from it. The reliance on the municipal code procedures relative to appointment and removal of municipal officers gets plain if nowhere because case law is clear that procedural guarantees are not the same as a property right. So that's a non-starter. And the ordinance that plaintiff has also focused on says nothing. The ordinance just says the mayor and the clerk will sign this contract. There are no assurances or guarantees of continued employment in that ordinance either. Recognizing that the contract, the ordinance, and the various Illinois municipal code provisions don't get him anywhere, plaintiff tries a whole is greater than the sum of its parts kind of approach. But that makes no sense. If individually these components are insufficient to establish a protected property interest and continued employment, altogether it doesn't get them anywhere either. And there's no case that's been cited adopting that approach that we can pull and glom all these different things and try to establish a protected property interest. Absent any additional questions from the panel, I'll rest on our briefs. How about his home rule argument? The home rule argument? It was undeveloped at the district court level. You'll see in the April 2015 order from Judge Leinenweber, he clamored for more. All that was said was, oh, as a home rule municipality, University Park has additional powers. That was the sum and substance of the argument that got presented to the district court. Now it's shored up a little bit here on appeal with just some generic propositions about how home rule municipalities have broad powers. And sure, they do in terms of local governance. But there are limitations on home rule authority. And one of them, I believe, is there are term of office limitations on Illinois home rule authority. But none of that, the point is none of that was talked about or developed below. And that's why the argument didn't carry the day at the district court and shouldn't carry the day here. Thank you very much. Thank you, counsel. Anything further, Mr. Kelleher? Your Honors, as far as some of these issues not being developed in the district court, the reason that some of these weren't, frankly, was because of the defendants. And I would point the court to docket entry 32 at page 10. The defendants explicitly state, quote, the defendants do not dispute that Lanier had a protected property interest in his position, his village manor. Those are their exact words. So in their summary judgment memorandum, they waived or conceded that point, and that's why the issue was not fleshed out further. As far as the home rule authority, again, this is not an argument that we're making on our own. This is based on the defendant's own words, its own actions. And in its amendment, they cite the home rule authority. In its ordinance, they say they're acting pursuant to home rule authority. So, again, these are not positions that Lanier is simply making up. These are things we are adopting from what the defendants did. And based on all of this, this gave him a reasonable expectation of continued employment. If there are no further questions, thank the court for its time. Thank you. The case is taken under advisement.